**NOT FOR PUBLICATION**

FILED

AUG 23 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| CENTRAL OREGON LANDWATCH, an Oregon non-profit corporation; WATERWATCH OF OREGON, an Oregon non-profit corporation,<br><br>Plaintiffs-Appellants,<br><br>v.<br><br>KENT CONNAUGHTON, in his official capacity as Regional Forester of Region 6; et al.,<br><br>Defendants-Appellees,<br><br>and<br><br>CITY OF BEND,<br><br>Intervenor-Defendant-Appellee. | No. 15-35089<br><br>D.C. No. 6:13-cv-02027-AA<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the District of Oregon
Ann L. Aiken, District Judge, Presiding

Argued and Submitted July 13, 2017
Portland, Oregon

Before: BERZON, WATFORD, and OWENS, Circuit Judges.

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Plaintiffs-appellants Central Oregon LandWatch and WaterWatch of Oregon (collectively, plaintiffs) appeal from the district court's grant of summary judgment to defendants-appellees the United States Forest Service (the Forest Service or Service) and City of Bend, Oregon (the City) (collectively, defendants) and denial of plaintiffs' motion for summary judgment. The City has long sourced drinking and municipal water from Tumalo Creek and Bridge Creek, tributaries of the Deschutes River, and has been authorized by the Service to operate an intake facility and pipeline for withdrawing that water on the Deschutes National Forest.

Plaintiffs instituted the underlying action after the Forest Service approved issuance of a Special Use Permit (SUP) authorizing the City to upgrade its intake facility, construct a new pipeline, and operate the system for 20 years subject to certain requirements (these actions are collectively referred to as the Bridge Creek Water Supply System Project (the Project)). Plaintiffs contend that the Forest Service's decision to authorize the Project, as detailed in its Environmental Assessment (EA) and Decision Notice and Finding of No Significant Impact, was arbitrary and capricious in violation of the Federal Land Policy and Management Act (FLPMA), National Forest Management Act (NFMA), and National Environmental Policy Act (NEPA).

Because the parties are familiar with the facts, we do not recount them here. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

1. Plaintiffs contend that the Project violates Inland Native Fish Strategy (INFISH) guidelines LH-1 and LH-3, meaning it is not consistent with the Deschutes National Forest Plan (the Forest Plan) and therefore violates FLPMA and NFMA. These INFISH guidelines direct the Forest Service to "avoid effects that would retard or prevent attainment of the [interim water temperature Riparian Management Objectives (RMOs) established by INFISH] and avoid adverse effects on inland native fish."

The Forest Service views RMOs as benchmarks against which to measure progress towards ultimate goals. This interpretation "is entitled to substantial deference." *Great Old Broads for Wilderness v. Kimbell*, 709 F.3d 836, 850 (9th Cir. 2013) (citation omitted). It is also supported by the interim nature of the RMOs and their appropriate application to larger stream systems.

Nor does INFISH require eliminating all existing activities to attain interim RMOs; rather, it requires that any new activities maintain existing conditions or move towards improvement. The Service determined that the Project would improve conditions in Tumalo Creek and would therefore comply with INFISH by "trending toward attainment" of the RMOs.

Lastly, the Forest Service was not required to impose minimum instream flow requirements in authorizing the SUP. Doing so would do little to improve the conditions of Tumalo Creek. The Forest Service determined that the Project would

positively impact stream flows in Sub-reach A1; would have no or minimal impact in Sub-reach A2, where under the current SUP the City's unused diverted water returns to Tumalo Creek; and would have no or minimal impact on Reach B because that reach is mostinfluenced by the Tumalo Irrigation District's diversion, over which the Forest Service lacks control.

Accordingly, the Forest Service's decision that the Project is consistent with the Forest Plan was not arbitrary and capricious.

2. Plaintiffs argue that the Forest Service violated NEPA because the Service only discussed two alternatives in detail: (1) implementation of the Project, and (2) a "no action" alternative based on the existing SUP. Plaintiffs contend that (1) the "no action" alternative was not a true "no action" alternative, (2) analyzing two near-identical alternatives is inadequate, and (3) the Service was required to analyze a no- or reduced-diversion alternative.

"[W]ith an EA, an agency only is required to include a brief discussion of reasonable alternatives," *N. Idaho Cmty. Action Network v. U.S. Dep't of Transp.*, 545 F.3d 1147, 1153 (9th Cir. 2008), and there is no "minimum number of alternatives that an agency must consider," as it is the "the substance of the alternatives" that matters. *Native Ecosys. Council v. U.S. Forest Serv.*, 428 F.3d 1233, 1246 (9th Cir. 2005). Here, the purpose of the SUP was to "authorize use of National Forest System lands for planned upgrades to the City's existing Bridge

Creek intake facility and replacement of the City's aging Bridge Creek water supply pipelines." The Forest Service determined that the surface water formed a "critical component of the City's dual-source [water] supply."

Plaintiffs do not object to the stated purpose and need, but contend that the Service was required to analyze "a true no action alternative involving no withdrawal" or a "reduced diversion alternative" and that the two alternatives studied in detail were insufficient. The EA did, however, describe the additional alternatives considered and dismissed from detailed study. *See N. Alaska Envtl. Ctr. v. Kempthorne*, 457 F.3d 969, 978 (9th Cir. 2006) ("An agency need not [] discuss alternatives similar to alternatives actually considered, or alternatives which are infeasible, ineffective, or inconsistent with the basic policy objectives for the management of the area." (citation and internal quotation marks omitted)). The EA explained that groundwater-only options would "compromise the City's ability to provide a safe and reliable water supply," reduce water flows in other parts of the Deschutes River, be costly, and be less reliable than a dual-source system. The EA also flagged possible environmental concerns posed by the groundwater-only option, including reduced surface stream flows (which are fed by groundwater) and increased energy consumption caused by pumping groundwater. This discussion was sufficient.

The Forest Service also did not act arbitrarily and capriciously by defining

its "no action" alternative as a continuation of the existing SUP, as doing so is permitted by its own regulations, Council of Environmental Quality regulations, and circuit precedent. *See* 36 C.F.R. § 220.7(b)(2)(ii); 46 Fed. Reg. 18,027 (Mar. 23, 1981); *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 623 F.3d 633, 642 (9th Cir. 2010); *Akiak Native Cmty. v. U.S. Postal Serv.*, 213 F.3d 1140, 1148 (9th Cir. 2000).

The authority on which plaintiffs rely is not to the contrary. Neither *Western Watersheds Project v. Abbey*, 719 F.3d 1035 (9th Cir. 2013), nor *Muckleshoot Indian Tribe v. U.S. Forest Service*, 177 F.3d 800 (9th Cir. 1999) (per curiam), establish that an EA's analysis in detail of two similar alternatives in and of itself is inadequate, where other alternatives were also considered, albeit briefly, and rejected. Instead, to mount a successful challenge under NEPA, plaintiffs must establish the existence of "a viable but unexamined alternative." *Muckleshoot*, 177 F.3d at 814 (citation omitted). Plaintiffs fail to make this showing. "[T]he alternatives considered were reasonable in light of the cited project goals," and the Forest Service's alternatives analysis was not arbitrary and capricious. *City of Carmel-by-the-Sea v. U.S. Dep't of Transp.*, 123 F.3d 1142, 1155 (9th Cir. 1997); *see also Ground Zero Ctr. for Non-Violent Action v. U.S. Dep't of the Navy*, 860 F.3d 1244, 1257 (9th Cir. 2017) (considered alternatives were not inadequate although "quite similar to each other").

3. Finally, plaintiffs contend that the Forest Service's analysis of the impact of climate change on the Project and level of stream flows in Tumalo Creek was inadequate. Plaintiffs argue that the analysis was arbitrary and capricious because the Service (1) used a qualitative, not quantitative, analysis and (2) called for additional monitoring and future adjustments, rather than taking a "hard look" at the impacts of climate change before authorizing the SUP.

The Service was not required to conduct a quantitative analysis. NEPA provides for analysis of impacts "in proportion to their significance" and requires "only brief discussion of other than significant issues." 40 C.F.R. § 1502.2(b). Here, the Forest Service determined that climate change would have the same potential impact on stream flows under either alternative, and therefore only a brief discussion of climate change's impact on the Project area was required. Furthermore, we allow agencies to describe environmental impacts in qualitative terms when they explain their reasons for doing so and "why objective data cannot be provided." *League of Wilderness Defs.-Blue Mountains Biodiversity Project v. U.S. Forest Serv.*, 689 F.3d 1060, 1076 (9th Cir. 2012) (citation omitted). The Service did just that, explaining "why precise quantification was unreliable" and therefore discussion in qualitative terms was required. *Id.* at 1077.

Moreover, the Service's provision for future monitoring did not conflict with NEPA's "hard look" requirement, particularly because the Service's qualitative

analysis was sufficient on its own. The Service also explained why the monitoring would allow for better evaluation of climate change and its impact on the Project area. Therefore, the Forest Service took an adequate "hard look" at the impact of climate change on the proposed action and Tumalo Creek.

**AFFIRMED.**